

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CASE NO. 5:25-cv-00249-FL

EDYTA HANNA BASISTA and

AMY HENDRICKS PALACIOS,

    Plaintiffs,

    v.

Defendants sued in their official and individual
capacities:
SENATOR SYDNEY BATCH; JUDGE CHRISTY
E. WILHELM; JUDGE NATHANIEL M. KNUST;
MAGISTRATE PHILLIP POWE; OFFICER
TYLER BURNS; OFFICER TRYSTAN JORDAN;
JUDGE JULIE L. BELL; JUDGE PAUL C.
PITTMAN; JUDGE VINSTON ROZIER; JUDGE
GEORGE R. HICKS III; JUDGE MARGARET P.
EAGLES; FORMER JUDGE DONNA
HEDGEPETH JOHNSON; JOHN DOE (as
NCDHHS Enforcement Officer).,

Defendants sued in their individual capacities only:
ATTORNEY HERBERT J. WHITE; MATTHEW
BLEDSOE; BRAD URBAN; ATTORNEY
EVONNE S. HOPKINS; DR. LINDA NORRIS;
DR. CYNTHIA SORTISIO; ATTORNEY JOHN T.
CROOK; ATTORNEY ROBERT SHIELDS;
KAREN SWINEHART; ATTORNEY MEREDITH
S. NICHOLSON; ATTORNEY KRISTIN RUTH;
ATTORNEY RANDELL HASTINGS; STEPHEN
MARINO; JOHN DOES 1–10.

**FILED**

MAY 09 2025

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

COMPLAINT FOR DAMAGES
AND DECLARATORY RELIEF
UNDER 42 U.S.C. §§ 1983, 1985,
1986, ADA and VAWA

This is a federal civil rights action brought by two women, both mothers, both survivors of

trauma and domestic violence, who were targeted not just by their former spouses, but by a legal

system that allowed those men to outsource power to others, including judges, attorneys, and

doctors. Five male defendants, Stephen Marino, Matthew Bledsoe, Brad Urban, Herbert Jay

White, and Randell Hastings, used courts, custody proceedings, child-support proceedings, and

contempt threats as weapons of domination. But the enforcement of that power was delegated to

women in robes and gatekeepers with institutional titles, female judges and court officers who functioned as enforcers, not neutrals. This lawsuit exposes how patriarchy hides behind procedure, how white male privilege co-opts judicial women to do its bidding, and how two pro se mothers were left to face a wall of institutional complicity.

While Defendants such as Senator Batch, an elected lawmaker and practicing litigator, along with Hopkins, Bell, and Wilhelm, executed critical legal actions, they did so in service of a structure engineered by the male Defendants, Marino, Bledsoe, Urban, White, and Hastings. These men retained the true authority and institutional advantage. The women served as judicial and procedural enforcers, not originators, reinforcing a hierarchy that erased Plaintiffs' constitutional personhood.

The actions taken against Plaintiffs occurred in a legal culture saturated with white male privilege, where men who control wealth, access, and narrative can weaponize the court system, and where women asserting their rights are punished for challenging that hierarchy.

## A. INTRODUCTION

This is a federal civil rights action brought under 42 U.S.C. §§ 1983, 1985(3), and 1986. It seeks declaratory, injunctive, and monetary relief for systemic constitutional violations committed by at least 24 named Defendants, including 7 state judges, 10 licensed legal professionals, and 4 powerful men, privileged not just by race or gender, but by a system that rewards control and punishes vulnerability. Their power needed no robe, no office, and no ethics, just people willing to carry out their will.

That power was made operational by women who knew better; women who themselves have lived histories of marginalization, and yet chose to side with dominance over dignity. Judges who had the authority to intervene chose silence. Lawyers who could have protected chose complicity. Therapists entrusted with healing chose distortion. This lawsuit holds them accountable not just for what they did, but for what they allowed to be done in their name.

Basista and Palacios v. Batch, et al        Complaint

The Plaintiffs, two pro se mothers, both indigent survivors of trauma and domestic violence, were subjected to state-enabled violations across multiple dockets, counties, and years. In each case:

- Sealed trauma records were unlawfully disclosed and used against them;

- Custody orders were fabricated or entered without jurisdiction, findings, or hearings;

- Court access was denied through calendar manipulation, procedural sabotage, and contempt threats.

The two cases are factually distinct but constitutionally identical: no custody order was adjudicated, no evidentiary hearing was held, and no finding of parental unfitness was ever made. Yet the outcome was the same: near-total loss of parental access enforced through unlawful process.

Because no adjudicatory due process was applied, the orders at issue are void ab initio and do not qualify for abstention or comity deference. Plaintiffs do not seek to relitigate family law; they seek to hold constitutional violators accountable for the deprivation of rights that federal law squarely protects.

Plaintiffs will prove these facts before a jury of their peers. Every factual claim in this Complaint is backed by public records, docket entries, court orders, sworn testimony, and exhibits. Through early discovery, subpoena power, and cross-examination, Plaintiffs will expose the coordinated breakdown in legal ethics, judicial neutrality, and constitutional governance that has defined their experience in the North Carolina courts.

## B. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as it arises under the Constitution and laws of the United States, including claims for the deprivation of federal constitutional rights under 42 U.S.C. §§ 1983, 1985(3), and 1986.

2. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b) and (e) because a substantial part of the events or omissions giving rise to the claims occurred within this district, and because at least one Plaintiff, Edyta Hanna Basista, resides within this district. Although Plaintiff Amy Hendricks Palacios resides in the Middle District of North Carolina, her claims arise from a common nucleus of operative facts, involve defendants who acted in concert across district lines, and assert joint claims under federal civil rights statutes, making this forum appropriate for the consolidated action. Venue is further appropriate because the constitutional injuries alleged herein have ongoing effects within this district, including economic harm, reputational damage, and interference with federally protected rights.

3. This Court also has personal jurisdiction over all Defendants under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983, as the acts complained of were committed under color of state law within the State of North Carolina. Many Defendants are state officials, attorneys, or judicial officers whose actions have impacted both Plaintiffs across multiple judicial districts within North Carolina. Defendants' conduct, including the enforcement of void orders, use of sealed trauma records, and procedural gatekeeping, has caused ongoing harm within this district, further supporting venue in the Eastern District.

C. PARTIES

1. Plaintiff Edyta Hanna Basista is a citizen and resident of Wake County, North Carolina, and the mother of minor children unlawfully withheld from her in violation of her constitutional rights.

2. Plaintiff Amy Hendricks Palacios is a citizen and resident of Cabarrus County, North Carolina and a survivor of domestic violence protected under federal law.

3. Senator Sydney Batch is a licensed attorney and a sitting North Carolina State Senator, elected by the people and sworn to uphold both the state and federal Constitutions. Fully versed in civil rights protections and constitutional law, she holds dual authority as a legal advocate and public official. Despite this, she exploited both positions of trust to

initiate litigation designed to suppress a pro se mother's access to justice. Her conduct did not reflect a misunderstanding of the law; it reflected a knowing weaponization of state power by an elected official using her public stature to lend credibility and coercive weight to a procedurally void and constitutionally offensive Termination of Parental Rights (TPR) petition. By doing so, Senator Batch violated not only the constitutional rights of the Plaintiff, but the public trust placed in her by voters. Her actions exemplify how legislative authority can be corrupted into a tool of personal retaliation when separated from its constitutional restraints.

4. Defendant Phillip Powe is a Wake County Magistrate, sued in his individual and official capacities for actions under color of law in both civil and criminal proceedings, including the issuance of an unlawful arrest warrant without probable cause or statutory compliance.

5. Defendant Judge Julie Bell is a District Court Judge in Wake County, sued in her individual and official capacities for injunctive and declaratory relief only. Judge Bell is not named for any specific ruling, but for her ongoing refusal to act on constitutionally mandated filings in the family court, her denial of access to meaningful judicial remedies, and her continuing enforcement of a custody order that has severed Plaintiff's parental rights without due process or findings of unfitness.

6. Defendant Judge Vinston Rozier is a Resident Superior Court Judge in Wake County, sued in his individual and official capacities for injunctive and declaratory relief. Judge Rozier issued a retroactive gatekeeper order barring Plaintiff from proceeding with her properly calendared motions without counsel See *Boddie v. Connecticut*, 401 U.S. 371 (1971), which was used to strike a pending Rule 60 motion and deny judicial review. These actions constitute judicial retaliation and systemic denial of access to courts.

7. Defendant Judge George R. Hicks III is a Superior Court Judge in Wake County, sued in his individual and official capacities for injunctive and declaratory relief. Judge Hicks refused to honor both a prior state protective order and a federal sealing order protecting Plaintiff's trauma-linked records, and threatened Plaintiff with sanctions for asserting her

rights under the Supremacy Clause. These acts support federal claims based on the First, Fifth, and Fourteenth Amendments, ADA Title II, and VAWA.

8. Defendant Judge Paul C. Pittman is a Superior Court Judge in Wake County, sued in his individual and official capacities for injunctive and declaratory relief. Judge Pittman entered summary judgment for Defendant Hopkins despite the case being in default and procedurally postured for Rule 55 adjudication. He failed to rule on dispositive motions properly before him and enabled the structural denial of Plaintiff's rights to be heard, in violation of due process.

9. Defendant Judge Margaret P. Eagles is the Chief District Court Judge in Wake County and is sued in her individual and official capacities for purposes of injunctive and declaratory relief. Judge Eagles presided over proceedings in Case No. 25CV008521 and engaged in a pattern of judicial retaliation, structural bias, and unconstitutional suppression of Plaintiff's rights. Despite acknowledging her personal familiarity with Defendant Hopkins in open court, Judge Eagles refused to recuse herself and instead sanctioned Plaintiff See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)., an indigent, disabled survivor, while barring her from using the case to obtain subpoenas for critical evidence, including police reports and medical records. Judge Eagles also permitted public disclosure of federally sealed records in defiance of a binding federal court order. Her actions constitute violations of the First and Fourteenth Amendments, the Supremacy Clause, and federal protections under the ADA and the Violence Against Women Act (VAWA).

10. Defendant Former Judge Donna Hedgepeth Johnson, individually and in her capacity as an officer of the court, is an attorney and former Cabarrus County District Court Judge. Despite her extensive knowledge of judicial procedure, she served as counsel to Matthew Bledsoe in this matter, facilitating the entry of void custody orders that she knew, or should have known, were jurisdictionally defective and procedurally improper.

11. Defendant Meredith S. Nicholson is a licensed North Carolina attorney and is sued in her individual capacity for actions taken under color of law and in furtherance of civil rights

violations. Nicholson served as defense counsel for Defendant Hopkins and actively participated in proceedings before a judge who admitted on the record to having a personal relationship with Nicholson and the Defendant. Nicholson failed to seek recusal or acknowledge judicial bias, pursued sanctions against Plaintiff despite her protected indigent and disability status, and aided in the presentation of sealed and federally protected materials. Her conduct facilitated the denial of Plaintiff's constitutional right to present evidence, violated the Supremacy Clause, and materially contributed to unlawful punishment in violation of the ADA, VAWA, and 42 U.S.C. §§ 1983 and 1985(3). Nicholson's participation was neither neutral nor passive; it reflected knowing, deliberate reinforcement of a judicial process that had collapsed into systemic bias.

12. Defendant Stephen Marino is Plaintiff Basista's former spouse, sued individually for conspiring under color of law with judicial actors, attorneys, and court personnel to obstruct reunification, suppress constitutional parenting rights, and procure fraudulent custody advantages. Defendant Stephen Marino is Plaintiff's former spouse, sued individually for knowingly conspiring with legal and judicial actors to suppress Plaintiff's parental rights, retaliate against her protected conduct, and obstruct her access to judicial relief.

13. Defendant Karen Swinehart is the Program Manager of Time Together, a supervised visitation center operated under contract with Triangle Family Services in Raleigh, North Carolina. Swinehart is sued in her individual capacity for actions taken under color of law. With court approval and in concert with Defendant Hopkins, Swinehart was delegated functional custodial authority and served as the gatekeeper to Plaintiff's access to her children. She exercised state-like power to control visitation, suppress Plaintiff's protected speech, and testify against Plaintiff in custody proceedings. Swinehart misrepresented the nature of Plaintiff's interactions with others, threatened termination of parental contact, and denied Plaintiff her First and Fourteenth Amendment rights. She further claimed Time Together was not subject to the Constitution, despite operating under judicial authority. Swinehart's criminal record—including convictions for larceny and document fraud—calls into question the propriety of her judicially approved role in

deciding access to Plaintiff's children. Her conduct supports claims under 42 U.S.C. §§ 1983, 1985(3), and 1986, and violations of Plaintiff's rights under the ADA, VAWA, and the U.S. Constitution.

14. Defendant Evonne Sammartino Hopkins is a private attorney who misused sealed mental health records in open litigation, initiated a time-barred criminal prosecution to suppress Plaintiff's legal activity, and conspired with state officials to inflict reputational and procedural harm. She is sued individually for acting under color of law and violating Plaintiff's civil rights.

15. Defendant Dr. Linda Norris is a clinical psychologist who functioned as a state agent in controlling Plaintiff's parenting access, acting outside of judicial oversight. She is sued for deprivation of rights under color of law.

16. Defendant Kristin Ruth is a former North Carolina judge judicially reprimanded and criminally convicted in 2012 for misconduct while serving on the bench. Ruth, now acting as a private legal consultant, was instrumental in structuring the 2023 custody regime used to deny Plaintiff all contact with her children. She selected the court-designated therapist and oversaw the content and enforcement of a consent agreement that was never adjudicated by a judge. Ruth operated as a de facto judicial surrogate with no oversight, enabling due process violations through private coordination with other actors already known to have disciplinary or criminal histories. Her role supports claims under 42 U.S.C. § 1983 for deprivation of parental rights under color of law, and further evidences the systemic collapse of judicial neutrality in Wake County family proceedings.

17. Defendant Raleigh Police Officer Tyler Burns is sued in his individual and official capacities for enforcing an unconstitutional arrest warrant lacking probable cause and aiding in an unlawful DNA seizure.

18. <u>Defendant Raleigh Police Officer Trystan Jordan</u> is sued in his individual and official capacities for participating in Plaintiff's unlawful arrest and seizure without a valid judicial basis.

19. <u>Defendant John T. Crook</u> is a licensed North Carolina attorney and is sued in his individual capacity for acting under color of law. Crook moved to strike Plaintiff's Rule 60 motion under a gatekeeper order obtained prior to a federal sealing directive and sought sanctions against Plaintiff despite her indigent, pro se, and disability-protected status. He argued in pleadings that Plaintiff's date of birth and partial Social Security Number were not confidential, in violation of clearly established federal and state privacy law. Crook's actions enabled the judicial suppression of federally protected filings and functioned as a retaliatory effort to silence Plaintiff's access to remedies. His conduct supports claims under 42 U.S.C. §§ 1983, 1985(3), and 1986, and violates the Supremacy Clause, the First and Fourteenth Amendments, the ADA, and the Violence Against Women Act.

20. <u>Defendant Robert Shields</u> is a licensed North Carolina attorney and is sued in his individual capacity for acting under color of law. Shields filed a procedurally defective Rule 56 motion for summary judgment against Plaintiff while the case was in default posture under Rule 55. He relied on sealed medical records subject to both a state protective order and a subsequent federal sealing order, and introduced false or misleading characterizations of Plaintiff's protected status. His actions resulted in the unlawful reversal of Plaintiff's procedural posture and the entry of judgment without adjudication on the merits, in violation of Plaintiff's rights under the First and Fourteenth Amendments, the Supremacy Clause, the ADA, and the Violence Against Women Act. Shields' conduct supports claims under 42 U.S.C. §§ 1983, 1985(3), and 1986, as a participant in a coordinated legal conspiracy to suppress and punish Plaintiff's lawful exercise of constitutional rights.

21. <u>Defendant Christy Elizabeth Wilhelm</u> was at all relevant times a judicial officer acting outside the scope of her jurisdiction and authority and is sued in her individual and official capacities.

22. <u>Defendant Nathanial M. Knust</u> is a District Court Judge for the General Court of Justice, Cabarrus County. He is sued in his individual and official capacities for actions taken under color of state law that violated Plaintiff's federally protected rights, including unlawful contempt orders, financial retaliation, and enabling fraud by private actors.

23. <u>Defendant Herbert Jay White</u> is an attorney licensed to practice law in North Carolina and a former DHSS attorney for Cabarrus County. White played a central role in the litigation against Plaintiff Palacios, initially representing her in child support matters before turning against her to represent both Matthew Bledsoe and Brad Urban in a series of retaliatory custody and support actions. Despite appearing to withdraw from the Bledsoe case, White continued to exert substantial control over the litigation, coordinating directly with Donna Hedgepeth Johnson and Randall Hastings to manipulate dockets, suppress evidence, and maintain jurisdiction where none existed. White leveraged his dual role as a former DHSS attorney and private litigator to access confidential records, fabricate jurisdiction, and guide procedural decisions designed to deprive Plaintiff Palacios of meaningful access to justice. His actions, taken under color of state law, constitute deliberate abuse of process, fraud on the court, and violations of the First and Fourteenth Amendments, making him personally liable under 42 U.S.C. §§ 1983, 1985(3), and 1986.

24. <u>Defendant Randell Hastings</u> is an attorney licensed to practice law in North Carolina and is currently representing Defendant Matthew Bledsoe in ongoing custody and child support proceedings against Plaintiff Palacios. Hastings became actively involved in this case after the purported withdrawal of Defendant Herbert Jay White but has continued to act as White's procedural proxy, maintaining the same aggressive and unconstitutional litigation tactics. Hastings has routinely participated in coordinated courtroom appearances alongside White and Donna Hedgepeth Johnson, leveraging his role to

suppress Plaintiff's procedural rights, delay adjudication of pending motions, and enforce void custody and support orders. His actions, taken under color of state law, constitute deliberate abuse of process, fraud on the court, and violations of the First and Fourteenth Amendments, making him personally liable under 42 U.S.C. §§ 1983, 1985(3), and 1986.

25. Defendant North Carolina Department of Health and Human Services ("DHHS") is a state agency that continued to enforce void and unlawful orders against Plaintiff.

26. Defendant John Doe is the Enforcement Officer for the North Carolina Department of Health and Human Services. He is sued in his individual capacity for unlawful garnishment enforcement against Plaintiff under void orders, and in his official capacity for prospective injunctive relief to halt all future enforcement of such orders.

27. Defendant Matthew Bledsoe conspired with state and private actors to deprive Plaintiff of her constitutional rights. Bledsoe is Plaintiff Palacios' former spouse, sued individually for conspiring under color of law with judicial actors, attorneys, and court personnel suppress constitutional parenting rights, and procure fraudulent custody orders. Defendant is Plaintiff's former spouse, sued individually for knowingly conspiring with legal and judicial actors to suppress Plaintiff's parental rights, retaliate against her protected conduct, and obstruct her access to judicial relief.

28. Defendant Brad Urban conspired similarly in the coordinated deprivations with Defendant Herbert Jay White.

29. Defendant Dr. Cynthia Sortisio is a psychologist licensed to practice in North Carolina who acted under color of state law when she conducted custody evaluations, issued mental health assessments, and testified in court proceedings involving Plaintiff Basista. Despite her existing therapeutic relationship with one of the children, Dr. Sortisio accepted an evaluative role in the custody case and issued findings that were later adopted into judicial orders. Her participation was not neutral; it was knowingly biased, and it formed the evidentiary foundation for restrictions that effectively terminated Plaintiff's parental rights. Dr. Sortisio is sued in her individual capacity for her role in

violating Plaintiff's due process rights, retaliatory collusion with court actors, and participation in fraud upon the court.

30. Defendants John and Jane Does 1–10 are individuals whose true names and capacities are presently unknown to Plaintiff. These Defendants are persons, including but not limited to court clerks, DHHS employees, administrative staff, and other agents or officials, who directly or indirectly participated in the unlawful deprivation of Plaintiff's constitutional rights described herein, including the manipulation of sealed court records, concealment of jurisdictional defects, enforcement of void orders, and retaliation against Plaintiff's exercise of protected rights. Plaintiff will amend this Complaint to substitute the true names and capacities of these Defendants when they become known through discovery.

## D. FACTUAL BACKGROUND – EDYTA HANNA BASISTA

1. Coordinated Retaliation and Coercive Control

Beginning in 2020, Defendants Marino and Hopkins engaged in a deliberate, coordinated effort to weaponize trauma, mental health crises, and law enforcement interventions to suppress Plaintiff's rights. This included orchestrating involuntary psychiatric holds without cause, using false reports to provoke police actions, and pressuring legal and mental health professionals to undermine Plaintiff's legal standing. This sustained campaign constitutes a direct violation of 42 U.S.C. §§ 1983, 1985(3), and 1986, and supports claims under the ADA, VAWA, and the First and Fourteenth Amendments.

2. Active Retaliation Under Color of State Law

Hopkins did not merely relay information; she acted with intent, repeatedly disclosing Plaintiff's protected, trauma-linked data in retaliation for Plaintiff asserting constitutional rights. These acts, performed under color of state law, reflect a deliberate breach of duty, not mere administrative oversight.

3. Systemic Use of Proxies to Isolate Plaintiff

Marino did not act alone. His control extended through a network of proxies, including lawyers, therapists, and court-appointed monitors, who enforced his preferred outcomes

without judicial scrutiny. Judge Julie Bell allowed this structure to operate unchecked, effectively delegating judicial power to private actors without oversight, in direct violation of the Fourteenth Amendment. On April 7, 2024, Plaintiff Basista was served with a Termination of Parental Rights (TPR) petition initiated by Defendant Senator Sydney Batch as she approached the courthouse for a separate, unrelated hearing in Basista v. Hopkins. This service was not coincidental; it was a calculated maneuver intended to catch Basista off guard, provoke emotional distress, and undermine her focus in unrelated proceedings. The decision to coordinate this ambush at a known court appearance demonstrates deliberate tactical alignment between Batch, Marino, Hopkins, and their proxies, further establishing the coordinated nature of their retaliatory campaign.

4. Unlawful Delegation of State Power

Defendant Swinehart, operating under court mandate, imposed unconstitutional content-based restrictions on Plaintiff's speech during supervised visitations, threatening to terminate parental contact based on protected First Amendment expressions. The court's endorsement of this arrangement, despite Swinehart's known criminal history, constitutes an unlawful delegation of state authority to unqualified actors.

5. Financial Exploitation Through Procedurally Defective Support Orders

In addition to the systemic denial of parental rights, Plaintiff Basista was subjected to financial exploitation through a procedurally defective child support order, entered on February 11, 2022. This order, authored by Defendant Evonne Hopkins and signed by Judge Julie Bell, imposed child support obligations without a proper assessment of Basista's financial status, medical condition, or actual income. Basista later challenged this order in a hearing on August 26, 2024, seeking to modify her support obligations to reflect her severe financial distress and ongoing medical needs. However, Judge Bell refused to consider her supporting medical documentation, insisting that Basista produce live testimony from her physician, effectively barring her from relief. This decision ignored Basista's documented medical conditions and the fundamental principle that child support must be based on a party's actual ability to pay, not speculative or inflated

Basista and Palacios v. Batch, et al                                    Complaint

income projections. Judge Bell's refusal to adjust the support order under these circumstances reflects a deliberate disregard for due process and the statutory requirements governing child support determinations, further compounding the financial and emotional distress inflicted on Basista. This order remains in effect despite clear evidence of its procedural defects and ongoing financial harm, and serves as a direct violation of Basista's constitutional rights to due process and equal protection under the Fourteenth Amendment.

6. Consent Order Constructed Without Due Process

The 2023 consent custody agreement, engineered without judicial oversight, was executed under the direction of discredited former judge Kristin Ruth. This agreement, never subjected to best-interest findings or adversarial hearing, effectively terminated Plaintiff's parental rights without due process, violating the fundamental rights protected by *Santosky v. Kramer*, 455 U.S. 745 (1982), and *Troxel v. Granville*, 530 U.S. 57 (2000).

7. Deliberate Judicial Obstruction

Judge Bell's refusal to act on Plaintiff's March 31, 2025, Motion to Expedite Hearing, despite a documented constitutional emergency, reflects deliberate obstruction, not judicial discretion. This failure to engage constitutes a violation of Plaintiff's First, Fifth, and Fourteenth Amendment rights.

8. Financial and Political Conflicts of Interest

Former Judge Kristin Ruth's financial contribution to Defendant Hopkins' political campaign, combined with her later involvement in Plaintiff's custody matter, demonstrates a clear conflict of interest, undermining the integrity of the judicial process.

9. Procedural Collapse and Denial of Reunification

Despite the collapse of court-ordered reunification efforts in 2024, no judicial action was taken to restore Plaintiff's parental rights, effectively severing her relationship with her children without adjudication of unfitness or neglect.

Basista and Palacios v. Batch, et al                                    Complaint

10. Systemic Denial of Due Process

Plaintiff's repeated efforts to obtain judicial relief through emergency motions were systematically ignored, compounding the constitutional violations and denying her access to fair adjudication.

11. Judicial Complicity in Procedural Sabotage

Judge Bell's ongoing deference to Marino's proxies allowed private actors to exert control over Plaintiff's parental rights without judicial accountability, reducing the court to an instrument of coercion and violating the Fourteenth Amendment.

12. Deliberate Delegation of Judicial Power to Private Actors

By refusing to intervene in known procedural abuses, Judge Bell effectively delegated judicial power to unqualified, biased actors, rendering her courtroom a forum for procedural violence rather than neutral adjudication.

13. Extrajudicial Retaliation

Defendants knowingly facilitated constitutional violations, including the use of sealed medical records and false psychological evaluations, to justify adverse custody outcomes, further compounding Plaintiff's injury.

14. Systemic Intimidation and Coercion

Marino's use of political connections, including Senator Batch's involvement in drafting the Termination of Parental Rights (TPR) petition, exemplifies a coordinated effort to suppress Plaintiff's constitutional claims through political and legal intimidation.

15. Direct Interference with Judicial Process

Judges and attorneys in this matter repeatedly violated federal sealing orders and retaliated against Plaintiff for asserting protected legal rights, compounding the constitutional harm and denying her access to fair proceedings.

16. Active Judicial Participation in Retaliatory Misconduct

Judges in this matter, including Bell, Pittman, Rozier, Eagles, and Hicks, failed to act on

Plaintiff's repeated requests for protective relief, reflecting a deliberate disregard for constitutional duties under the Fourteenth Amendment.

17. <u>Procedural Manipulation as a Weapon of Control</u>

The refusal to seal Plaintiff's trauma history, despite a binding federal order, and subsequent threats of sanctions for asserting this right, constitute deliberate procedural violence in violation of the Supremacy Clause.

18. <u>Pattern of Psychological Coercion and Abuse</u>

Defendants' use of public shaming, intimidation, and coercive legal tactics reflects a deliberate strategy to isolate and suppress Plaintiff, violating her fundamental rights under the First and Fourteenth Amendments.

E. <u>FACTUAL BACKGROUND – AMY HENDRICKS PALACIOS</u>

1. Plaintiff Palacios faced not only hostile male litigants, but judges who refused to challenge them. Christy Wilhelm, former Judge Donna Hedgepeth Johnson, and Randell Hastings functioned as procedural enforcers for a patriarchal litigation structure, repeatedly validating procedurally improper filings and ignoring jurisdictional defects to maintain control over Plaintiff. This included the ambush "Gatekeeper Trial" of 2023, where Palacios was forced to defend against an order spanning multiple cases, including termination proceedings, without notice or meaningful opportunity to be heard. Their courts became channels for male-driven enforcement, where sealed trauma records were reopened to give legal cover to men who had already taken everything else. That power imbalance was not just personal, it was structural, institutional, and constitutional in scale.

2. Wilhelm's prior professional association with Defendant White only deepens the structural concern: she did not just accept his litigation positions, she validated them, adopted them, and used her authority to execute them against a mother never granted access to due process.

3. The Gatekeeper Order entered against Plaintiff Palacios on February 17, 2023, stands as one of the clearest examples of this systemic abuse. It was issued after more than a year of near-weekly court appearances without a single adjudicated hearing, only to culminate in a surprise gatekeeper trial. This order barred Plaintiff from filing pleadings in multiple cases, including her TPR matters and the Urban case, without pre-approval, effectively silencing her and cutting off access to judicial relief. It also included a gag provision, preventing her from discussing the legal abuses she had endured, further isolating her from meaningful redress.

4. During her pregnancy, Plaintiff Palacios endured repeated abuse at the hands of Matthew Bledsoe, including an incident in which he dragged her down a flight of stairs while she was visibly pregnant. This act of violence was not only life-threatening; it was part of a broader pattern of coercive control that continued long after the physical abuse ended. Despite documentation of this abuse, no court or enforcement officer intervened to protect Plaintiff or her children. Instead, the system favored Bledsoe, ultimately transferring custody of the children to him while excluding Plaintiff from the process entirely.

5. In 2015, Mecklenburg County entered a custody order granting Plaintiff equal shared custody of her children.

6. Beginning October 30, 2018, Chief District Court Judge Christy Wilhelm, alongside former Judge Donna Hedgepeth Johnson and attorney Randell Hastings, presided over case no. 18-CVD-3436-120 in Cabarrus County, a case that was void from inception. Despite being administratively marked "disposed" on the same day it was filed, this case continued to be manipulated through the improper injection of confidential Mecklenburg County records, as evidenced by repeated "Legacy Complete Case Scans" as recently as May 5, 2025. These scans improperly transferred sealed trauma-linked records from a closed Mecklenburg County file to a fraudulent Cabarrus County proceeding. Judge Wilhelm proceeded to act on the file for over six years, signing several orders including

temporary custody, contempt, and wage garnishment, without ever adjudicating jurisdiction or due process.

7. The case was administratively marked "disposed" on the day it was filed, yet remained active solely through Wilhelm's actions. Despite Plaintiff's repeated motions to dismiss and jurisdictional objections, including a formal Limited Appearance and Cease and Desist filed March 7, 2025, Judge Wilhelm issued and enforced rulings under a case number that was legally null. In March 2025, Wilhelm allowed sealed trauma records to be injected into the case file to fabricate jurisdiction retroactively. These acts occurred long after federal trauma sealing protections were in place and while Wilhelm had actual notice of Plaintiff's legal objections and trauma-linked medical status.

8. Christy Wilhelm, Donna Hedgepeth Johnson, and Herbert Jay White did not simply issue routine judicial rulings; they actively participated in a coordinated scheme of fraud and procedural manipulation. Despite White's supposed withdrawal as counsel, he remained deeply involved in the litigation, working closely with Johnson and Hastings to maintain control over the proceedings. White's dual role as a former DHSS attorney and former counsel to Plaintiff Palacios gave him insider knowledge, which he weaponized to guide filings, suppress evidence, and maintain jurisdiction where none existed.

9. This collusion was not merely procedural; it was tactical. Wilhelm, Johnson, White and Hastings collectively blocked Palacios's attempts to remove her emancipated children from child support orders, knowing that these orders were void and unsupported by lawful findings. Wilhelm's refusal to dismiss the case, despite full knowledge of its jurisdictional defects, constituted deliberate constitutional indifference, supervisory abuse, and a denial of access to courts under 42 U.S.C. §§ 1983, 1985, 1986 and the First and Fourteenth Amendments. These actions were not just procedural missteps; they were deliberate violations of constitutional rights, executed to suppress a mother's access to justice.

10. DHHS continues to this day to garnish Plaintiff's wages based on the void orders, despite formal legal objections and demands to cease enforcement.

11. In contrast to the fictitious case fabricated under "Matthew Bledsoe v. Mecklenburg County," Plaintiff was properly named as a party in the related proceeding titled *Palacios v. Urban*, Cabarrus County File No. 17-CVD-001385-120, which was presided over by Judge Nathaniel Knust.

12. In that proceeding, Judge Knust and the named Defendants continued their unconstitutional misconduct by knowingly enforcing void and fraudulent financial orders against Plaintiff. Even where jurisdiction had been properly established, Judge Knust repeatedly validated litigation that was grounded in fabricated facts, procedural obstruction, and retaliation, demonstrating a systemic pattern of abusive judicial conduct.

13. Defendant Herbert Jay White, representing both of Plaintiff's former spouses, Matthew Bledsoe and Brad Urban, simultaneously, committed overt fraud on the court. While receiving tens of thousands of dollars from Plaintiff, White filed pleadings falsely alleging nonpayment to manufacture grounds for contempt. This was done with the knowledge and acceptance of Judge Knust, who ignored documented payments and entered adverse rulings based on misrepresentations, in violation of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

14. At all times, Defendant Herbert Jay White, despite his apparent withdrawal from direct representation, remained deeply involved in the litigation against Plaintiff Palacios. He often appeared in court alongside Donna Hedgepeth Johnson and Randell Hastings, entering the courtroom as a united front. This arrangement allowed White to maintain control over the proceedings while giving the false appearance of independent counsel. This coordinated presence reinforced the narrative that White had "withdrawn" from the case, while in reality, he remained a primary architect of the litigation strategy against Palacios. This shadow involvement is evident in the courtroom dynamics and joint filings where White's influence persisted despite formal substitutions of counsel.

15. Despite the existence of canceled checks, digital confirmations, and formal objections establishing Plaintiff's compliance with her obligations, Judge Knust issued contempt findings and denied indigency, authorizing coercive financial penalties and reputational

damage. These actions violated Plaintiff's rights to procedural due process, equal protection, and access to court, and were executed with actual knowledge of exculpatory evidence.

16. This scheme was not the result of judicial oversight or legal error; it was a knowing and deliberate campaign of constitutional deprivation executed across multiple dockets, with Judge Knust serving as a central facilitator. His judicial actions reflected not neutral adjudication but active endorsement of retaliatory misuse of process and systemic discrimination against Plaintiff.

17. As in the fabricated Bledsoe matter, Defendants' conduct in the Urban case further supports Plaintiff's claims under 42 U.S.C. §§ 1983, 1985(3), 1986, the Americans with Disabilities Act (ADA), and the Violence Against Women Act (VAWA).

18. Matthew Bledsoe and Brad Urban, represented by Jay White simultaneously, colluded with public officials to exploit Plaintiff financially and legally. Protected domestic violence records were unlawfully disclosed to fabricate jurisdiction and enforce void orders against Plaintiff.

19. The case file further reveals that Defendant Herbert Jay White leveraged his dual role within the Cabarrus County DHSS to fabricate a false public interest in the custody proceedings. By inserting DHSS as a supposed party of interest, White created the false appearance of state oversight where none existed, allowing him to inject confidential trauma records into the case under the guise of child welfare concerns. This procedural fraud reached into multiple cases, including the Urban and Bledsoe files, and directly violated the Fourteenth Amendment rights of Plaintiff Palacios.

20. Compounding this betrayal, Defendant Herbert Jay White originally represented Plaintiff Palacios in securing child support against Matthew Bledsoe in his capacity as a DHSS attorney. This initial role as her advocate not only gave him access to her confidential financial and family information, but also established a duty of loyalty and confidentiality, which he later violated by representing both Bledsoe and Urban against

her. This is not just a conflict of interest; it is a professional and constitutional betrayal that transformed White from an advocate into a saboteur, using his insider knowledge to construct a litigation trap against his former client.

21. Defendant Judge Knust presided over Cabarrus County File No. 17-CVD-1385-120 and issued the November 27, 2024 Contempt Order and January 9, 2025 Indigency Denial Order.

22. At the time Brad Urban was awarded custody of Plaintiff Palacios's children, he was incarcerated. The court transferred custody away from Plaintiff during this period without notice, a hearing, or any finding of unfitness. This action, effectively granting an incarcerated father custodial authority while depriving the mother of access, reflects not just judicial error but systemic bias rooted in gendered assumptions and white male privilege. It is a constitutional violation of the Fourteenth Amendment's guarantee of due process and equal protection.

23. These orders were issued despite documented proof of substantial payments made by Plaintiff, including bank records, affidavits, and text messages from Defendant Urban, all of which were either excluded or disregarded.

24. Defendant Knust adopted and enforced factually false narratives promoted by Jay White, including misrepresentations about non-payment, income, and access to funds.

25. The Contempt Order lacked a constitutionally required purge condition and failed to identify an enforceable legal obligation, rendering it void ab initio under *Turner v. Rogers* and *Hicks v. Feiock.*

26. The Indigency Denial Order miscalculated Plaintiff's income by over $65,000 and summarily deemed her affidavit "not credible" without evidentiary support, in violation of *Griffin v. Illinois.*

27. Defendant Knust knowingly relied on fraud on the court perpetrated by Defendant Jay White and acted in concert with him to issue unconstitutional orders designed to deprive

Plaintiff of due process, access to courts, and fair adjudication of her financial obligations.

28. Defendant John Doe, acting under color of law and in coordination with Defendant Herbert Jay White and others, enforced unlawful garnishments against Plaintiff based on facially void custody and support orders. Despite being formally notified of the jurisdictional defects and constitutional violations, Defendant continued to garnish Plaintiff's wages, constituting an unconstitutional seizure of property under the Fourteenth Amendment and a due process violation under 42 U.S.C. § 1983.

29. Plaintiff Palacios lives in constant fear that new ex-parte court orders will be issued against her, without notice, without hearing, and without any valid jurisdiction. She has been forced to prepare for courtroom appearances with less than one day's notice, under threat of law enforcement execution and financial seizure. These tactics are not isolated incidents but part of a deliberate strategy of intimidation that renders her access to court illusory and fundamentally coercive.

30. Defendant Matthew Bledsoe hired Defendant Brad Urban, a private investigator, to assist in a custody battle against Plaintiff. Urban later married Palacios and had two children with her, while Defendant Herbert Jay White represented both men simultaneously in proceedings aimed at taking Plaintiff's Palacios' children and extracting tens of thousands of dollars in alleged support and legal fees to Defendant White under the color of law. This constellation of overlapping interests and private collaboration constitutes a per se conflict of interest and exemplifies the fraud on the court at the heart of Plaintiff's constitutional claims.

31. These acts were taken in clear absence of jurisdiction, were judicially and administratively improper, and were executed with knowledge of ongoing litigation abuse, harassment, and financial coercion constituting actionable violations of 42 U.S.C. §§ 1983, 1985(3), 1986, the ADA, and VAWA.

32. Judge Wilhelm's, Donna Hedgepeth Johnson's, and Herbert Jay White's conduct was not the result of inaction, it was the active enforcement of a power structure designed and driven by men. White, despite his supposed withdrawal as counsel, maintained a commanding influence over the litigation through his dual roles as a former DHSS attorney and an ongoing behind-the-scenes architect of this judicial scheme. While technically no longer listed as Palacios's adversary, White continued to manipulate the proceedings by coordinating directly with Johnson and Hastings, both of whom he had personally brought into the case as his procedural proxies. This arrangement allowed White to maintain control over the litigation while giving the false impression that he had formally withdrawn, preserving his power over the outcome without exposing himself to direct liability.

33. White's ongoing control was more than mere coordination—it was structural domination. As a former DHSS attorney, he retained direct access to confidential records, state enforcement mechanisms, and institutional credibility, which he used to manipulate the litigation to his advantage. He effectively weaponized the state's own child support apparatus against his former client, creating the false impression that these actions were driven by legitimate state interest, when in reality they were privately orchestrated acts of retaliation.

34. Judge Wilhelm acted not as a neutral adjudicator but as an extension of White's strategy, routinely entering orders that lacked jurisdiction, fabricated facts, and violated federal due process. Donna Hedgpeth Johnson, a former judge herself, leveraged her institutional knowledge to shield White's ongoing influence and prevent meaningful adjudication, blocking Plaintiff Palacios's attempts to remove her emancipated children from child support orders. This was not a mere oversight; it was a deliberate act of judicial sabotage, designed to deprive Palacios of access to justice and enforce a patriarchal control over her rights as a mother.

35. These acts constitute deliberate constitutional indifference, supervisory abuse, and a systemic denial of access to courts, in violation of 42 U.S.C. § 1983 and the First and

Fourteenth Amendments. This was not simply the failure of a few judicial officers—it was a coordinated, gender-based attack on a pro se mother, carried out under the color of state law and shielded by procedural formality.

36. .

37. Other state actors, such as former Judge Donna Hedgpeth Johnson, Defendant Hopkins and Defendant Swinehart, did not hold judicial office but played instrumental roles in executing male-dominated control. Hopkins, in particular, operated as a procedural and reputational enforcer, releasing sealed mental health data, coordinating with law enforcement, and weaponizing protective systems to retaliate against Plaintiff Basista. These actors helped carry out the emotional and institutional labor of silencing women who resisted legal domination.

## F. INSTITUTIONAL ENFORCEMENT OF MALE-DOMINATED RETALIATION

This pattern, men initiating litigation and women in robes enforcing it, is not incidental. It reflects the deeper reality of patriarchal power operating through judicial systems, where even female judges can become the instruments of male control. Plaintiffs assert that their gender, trauma status, and indigency were not only ignored but systematically weaponized by those wielding power and those enabling it.

In Plaintiff Basista's case, Judge Julie Bell allowed Stephen Marino to control the litigation through proxies. Rather than require evidentiary hearings or rule on pending motions, Bell deferred to reunification therapists and counselors aligned with Marino. This abandonment of judicial duty effectively turned courtroom access into a conditional privilege, one controlled not by law but by the preferences of a dominant, white male litigant.

Judge Julie Bell's role in this case is not one of mere inaction; it is deliberate constitutional indifference that has actively enabled the ongoing deprivation of fundamental rights. Judge Bell has repeatedly failed to intervene despite knowing that the foundational custody orders in question were never adjudicated, lacked jurisdiction, and were procedurally defective from inception. This is not just a failure to act; it is a willful abandonment of judicial duty, a

Basista and Palacios v. Batch, et al                                                    Complaint

betrayal of her oath to uphold the Constitution, and a conscious decision to place the power of the court at the disposal of powerful male litigants. Her refusal to schedule hearings, rule on pending motions, or correct obvious procedural defects has transformed her courtroom into a legal black hole where due process ceases to exist. This is not mere negligence; it is a judicial abdication that has empowered abusive litigation tactics, silenced pro se mothers, and weaponized the court system as a tool of coercion. Judge Bell's actions are not just errors of discretion, they are deliberate, repeated, and ongoing denials of fundamental rights, actionable under 42 U.S.C. § 1983 as deliberate constitutional violations.

This act of retaliation, publishing sealed trauma records in direct violation of a protective order, underscores the shamelessness with which state actors have operated. This was not a mistake. It was a weapon. A message. A coordinated effort to punish Plaintiff Basista for daring to invoke her rights. That it occurred while a protective order was in force, and in defiance of a later federal sealing order, is not just improper, it is proof of a system indifferent to federal law and intoxicated by its own impunity.

In Plaintiff Palacios's case, Chief Judge Christy Wilhelm presided over a fabricated case number and knowingly allowed it to remain active for years, issuing orders against a woman who was never properly served, noticed, or included in the caption. Wilhelm was a former colleague of Defendant Herbert Jay White, who represented multiple male litigants against Plaintiff simultaneously. Wilhelm's refusal to dismiss the case or intervene against financial and procedural abuse created an institutional seal of approval for male-driven coercion.

The judicial response to Matthew Bledsoe's abuse of Plaintiff Palacios was not protective, it was permissive. Even after documented incidents of physical violence, including assault during pregnancy, courts continued to validate his control over the children. This is not due process, it is the institutional enforcement of male dominance through legal process.

The fact that a court transferred custody to Brad Urban, a man who was incarcerated at the time, while simultaneously restricting a trauma-impacted mother from asserting her parental rights, is a clear illustration of how white male privilege operates through institutional

systems. This was not a neutral decision, it was an affirmation of hierarchical power structures over constitutional law.

The ability of the male Defendants to dominate multiple courtrooms without scrutiny was not accidental; it was a function of entrenched white male privilege. They were believed without evidence, obeyed without challenge, and protected by procedural structures that erased the women they targeted.

This included Donna Hedgepeth Johnson, a former judge turned private litigator, who leveraged her insider knowledge to reinforce this patriarchal hierarchy, weaponizing her judicial authority against Plaintiff Palacios despite clear jurisdictional defects.

The enforcement was not carried out by men, it was enabled by women entrusted with authority, some of whom themselves hold identities long excluded from power structures. Black women. Queer women. Women who, by virtue of their lived experience, should have seen this for what it was: patriarchal retribution disguised as process. But instead of breaking the pattern, they reinforced it.

This case is not merely about judicial error, it is about the structural enforcement of gender-based domination through state machinery. Male litigants used their positions of privilege to initiate baseless or retaliatory legal actions, but it was judicial officers, most notably Judges Julie Bell and Christy Wilhelm, who gave those actions the force of law. These judges, while possessing full knowledge of constitutional violations and procedural irregularities, chose to act as enforcers rather than protectors of due process. They used the power of their office not to shield the vulnerable but to uphold and enforce the demands of powerful men.

The civil rights violations described herein were not accidental or spontaneous—they were orchestrated by men with institutional privilege, carried out by legal professionals trained to appear neutral. The male Defendants did not act alone; they exploited their access to legal systems by conscripting judicial officers and court personnel, many of them women, into the machinery of enforcement. This gendered hierarchy is not incidental, it is the constitutional foundation of the harm.

Basista and Palacios v. Batch, et al                                              Complaint

The result of this gendered structure is a system in which women are forced to destroy other women to serve male agendas. Plaintiffs were not dismantled by direct violence, but by institutional force administered through female gatekeepers who were either co-opted by power or blind to its origin. This case is about more than custody, it is about how courts preserve the appearance of neutrality while executing the orders of those who benefit most from hierarchy.

G. **CRIMINAL COURT MISCONDUCT**: RETALIATORY ARREST AND PROCEDURAL VIOLATIONS ORCHESTRATED BY DEFENDANT HOPKINS AGAINST PLAINTIFF BASISTA (24CR405552-910)

This section addresses a separate and independently actionable sequence of constitutional violations stemming from Plaintiff's unlawful arrest and criminal prosecution, initiated by Defendant Evonne Hopkins and executed under color of law by judicial and law enforcement officers. These events were intended to retaliate against Plaintiff's lawful exercise of her constitutional rights in pending civil and family court proceedings.

1. Unlawful Warrant and Statutory Defects

On September 9, 2024, Magistrate Phillip Powe issued a warrant for Plaintiff's arrest related to a December 6, 2020 incident. This charge was filed nearly four years after the alleged event, exceeding the two-year statute of limitations under N.C.G.S. § 15-1. The warrant was issued without a sworn affidavit or testimony, in direct violation of N.C.G.S. § 15A-304(d) and without constitutionally sufficient probable cause, thereby violating Plaintiff's Fourth and Fourteenth Amendment rights.

2. Illegal DNA Seizure

During the arrest, Plaintiff was subjected to warrantless DNA collection. The misdemeanor charge lacked any forensic relevance, and no judicial order authorized the collection. This violated N.C.G.S. § 15A-266.3A and constitutes an unlawful search and seizure under the Fourth Amendment and Supreme Court precedent in *Maryland v. King* See *Maryland v. King*, 569 U.S. 435 (2013)., 569 U.S. 435 (2013).

### 3. Excessive Bail and Eighth Amendment Violations

Plaintiff, an indigent and nonviolent individual, was issued a $10,000 secured bond without a hearing, without written findings, and without application of any risk-based framework. The bail imposed was punitive and constitutionally excessive under the Eighth Amendment See *Stack v. Boyle*, 342 U.S. 1 (1951). and relevant jurisprudence, including *Stack v. Boyle*, 342 U.S. 1 (1951).

### 4. Retaliatory Arrest and Psychological Harm

The arrest was instigated by Defendant Hopkins and occurred on September 11, 2024, a date with known PTSD implications for Plaintiff. The prosecution was initiated not to serve a legitimate public interest but to retaliate against Plaintiff's exercise of protected rights in civil litigation. The use of criminal process as a retaliatory weapon violated Plaintiff's rights under the First and Fourteenth Amendments and constitutes abuse of process.

### 5. Coordinated Legal Suppression

Defendant Hopkins leveraged the criminal prosecution to undermine Plaintiff's credibility in ongoing family and civil court matters. Raleigh Police Officers Tyler Burns and Trystan Jordan, acting under color of law, executed the arrest without a sufficient legal basis. Magistrate Powe issued the defective warrant without statutory compliance. Together, their conduct represents a coordinated campaign of retaliatory suppression in violation of 42 U.S.C. §§ 1983, 1985(3), and 1986, as well as Plaintiff's rights under the ADA and the Violence Against Women Act.

The unlawful arrest in 2024 was not an isolated act, but part of a sustained campaign of retaliatory misconduct dating back to at least November 2020. At that time, Defendant Marino, in direct coordination with Defendant Hopkins, weaponized Plaintiff's trauma to initiate an involuntary mental health commitment, resulting in her arrest at a behavioral health facility. Police records confirm that Defendant Hopkins personally urged law enforcement to arrest Plaintiff while she was receiving care. This exploitation of crisis for personal legal leverage established the blueprint for the 2024 arrest, including the same actors, the same coercive intent, and the same misuse of legal process to suppress

Plaintiff's constitutional rights. This continuity of tactics supports the existence of an ongoing civil rights conspiracy under 42 U.S.C. § 1985(3), and demonstrates intent, pattern, and unlawful motive in violation of the First, Fourth, and Fourteenth Amendments.

Assistant District Attorney Seth Gulledge did not initiate the prosecution against Plaintiff but assumed control of the matter after the unconstitutional arrest was executed. Despite being informed that the misdemeanor charge was time-barred under N.C.G.S. § 15-1 and the warrant violated requirements under N.C.G.S. § 15A-304, the prosecution remained open for months. Although Plaintiff acknowledges that Mr. Gulledge maintained professional decorum and respect throughout, the continued pendency of a constitutionally void prosecution, despite being placed on legal notice, further exacerbated Plaintiff's unlawful deprivation of liberty, reputation, and legal standing. His passive role underscores the broader institutional failure to correct unconstitutional actions once initiated by other actors.

## H. PREEMPTION OF ABSTENTION DOCTRINES

This action does not seek federal review of valid state court judgments. It challenges state actors' unconstitutional conduct under color of law, in violation of Plaintiffs' independent federal rights. No lawful custody adjudication exists that would support abstention under any doctrine.

The orders relied upon by Defendants are void ab initio: they were issued without subject matter jurisdiction, without proper notice, and without constitutionally sufficient hearings.

For Plaintiff Basista, the 2023 custody order was not a product of judicial adjudication. It was a consent-based order signed without evidentiary hearing, without a finding of unfitness, and administered by private third parties with disciplinary histories. That order:

- Required $250/hour supervision, effectively eliminating contact for an indigent mother;

- Was enforced by non-judicial actors acting outside lawful authority;

- Was challenged in Basista's January 2025 Motion to Modify Custody, which detailed five years of denied access, procedural sabotage, and the use of cost and delay as tools of forced alienation.

The 2023 custody order was predicated on a biased psychological evaluation by Dr. Cynthia Sortisio, a therapist with an existing clinical relationship to the child. Plaintiff was coerced into accepting the evaluator under duress and silenced by a gag order, eliminating any adversarial challenge. No evidentiary hearing or neutral review occurred.

For Plaintiff Palacios, no final custody determination was ever lawfully entered. The February 2022 order was issued under a procedurally fabricated docket (18-CVD-3436-120), where Plaintiff was:

- Never properly served or noticed;

- Not named in the original caption;

- Denied counsel and due process.

These facts are constitutionally disqualifying. These were not technical defects; they are systemic failures that eliminate the legitimacy of the underlying proceedings. No final state judgment or valid judicial process exists to trigger abstention. This case falls well outside the scope of the Rooker-Feldman doctrine. Under *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), federal courts have jurisdiction over claims asserting independent constitutional injury, especially where no final state judgment has been rendered or where jurisdiction was lacking from inception.

Likewise, Younger abstention is inapplicable because:

1. No ongoing state proceeding exists that implicates comity;

2. Even if one did, abstention is overcome by bad faith, extraordinary circumstances, and irreparable constitutional injury (*Younger v. Harris*, 401 U.S. 37 (1971));

Basista and Palacios v. Batch, et al                                    Complaint

3. Defendants' actions, including docket fabrication, refusal to adjudicate, and retaliatory misuse of sealed records, fall outside the judicial function entirely.

The conduct at issue reflects not neutral discretion, but deference to hierarchical power, specifically a structure preserved by white male privilege and enforced by judicial passivity, retaliation, and procedural manipulation.

Judicial immunity is likewise unavailable. Under *Forrester v. White*, 484 U.S. 219 (1988), non-adjudicative, administrative, and retaliatory acts—such as blanket denials of hearings, docket manipulation, and refusal to enforce protective orders—are not protected. These acts were extrajudicial, intentional, and unconstitutional.

Under *Mitchum v. Foster*, 407 U.S. 225 (1972), Congress enacted 42 U.S.C. § 1983 specifically to authorize federal courts to issue injunctive relief when state officials violate constitutional rights—even when doing so requires overriding abstention-based doctrines.

To the extent any Defendant argues these claims are speculative or conclusory, Plaintiffs assert a constitutional right to discovery. Under *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), civil rights pleadings must allege plausible violations, not provide evidence. This Complaint is supported by public records, court filings, and unrebutted history. Plaintiffs will prove every claim herein through Rule 26 discovery, subpoena, deposition, and federal procedure.

I. CLAIMS FOR RELIEF

Each Plaintiff asserts the following shared federal claims, with distinct fact patterns but common constitutional violations:

COUNT I — Violation of Civil Rights: Due Process, Equal Protection, and Access to Courts (42 U.S.C. § 1983)

Defendants, acting individually and in concert under color of state law, deprived both Plaintiffs of their fundamental constitutional rights, including:

- Plaintiff Palacios was denied due process and access to courts through the enforcement of void contempt and indigency orders, unlawful wage garnishments, and the use of fabricated or jurisdictionally defective proceedings, despite evidence disproving the underlying factual bases.

- Plaintiff Basista was denied access to family court relief, reunification proceedings, and equal protection when judicial and administrative officers refused to adjudicate valid motions, enforced procedurally collapsed orders, and issued gatekeeping restrictions barring access to judicial process. Judge Bell's failure to schedule a hearing after denying injunctive relief constituted judicial complicity in the ongoing procedural sabotage of Plaintiff's parental rights. That denial of access to court, absent any procedural path forward, constitutes an independent violation of the Due Process Clause and supports liability under §§ 1983, 1985, and 1986.

- Defendant Dr. Cynthia Sortisio, acting under color of state law and with knowledge of her conflict of interest, issued a biased psychological evaluation adopted by the court to restrict Plaintiff Basista's access to her children. This evaluation was rendered without adversarial process, formed the foundation for the 2023 custody order, and constituted an extrajudicial deprivation of Plaintiff's liberty interests in violation of the Fourteenth Amendment.

These actions lack any legitimate governmental interest and directly violated Plaintiffs' rights under the First, Fifth, and Fourteenth Amendments.

### COUNT II — Conspiracy to Violate Civil Rights (42 U.S.C. § 1985(3))

Defendants, acting individually and under color of state law, deprived both Plaintiffs of their fundamental rights secured by the First, Fifth, and Fourteenth Amendments, including due process, equal protection, and meaningful access to courts.

- Plaintiff Amy Palacios was denied due process when courts enforced void contempt and indigency orders arising from jurisdictionally defective proceedings under fabricated

docket numbers. Despite proof of compliance, she faced wage garnishment, deprivation of procedural remedies, and exclusion from adversarial process. These actions constitute systemic denial of equal protection and access to court.

- Plaintiff Edyta Basista was denied access to reunification proceedings, enforcement of parenting time, and meaningful adjudication of motions. State actors, including Judge Julie Bell, refused to schedule hearings or rule on valid filings. After denying injunctive relief, Judge Bell failed to schedule the emergency motion that followed, effectively closing the courthouse doors to Plaintiff without legal justification. This obstruction of access constitutes a standalone due process violation actionable under § 1983.

- Defendant Dr. Cynthia Sortisio, acting under color of law and despite an active conflict of interest, issued a prejudicial psychological evaluation that became the sole evidentiary basis for a custody order restricting Plaintiff Basista's parental access. This report was issued without neutral oversight, subject to no cross-examination, and constituted an extrajudicial deprivation of liberty protected by the Fourteenth Amendment.

The acts of these Defendants were undertaken with deliberate indifference to Plaintiffs' rights and absent any legitimate governmental interest. Each act constituted an unconstitutional abuse of state power under 42 U.S.C. § 1983.

COUNT III — Failure to Prevent Civil Rights Violations (42 U.S.C. § 1986)

Defendants conspired, under color of law and in their individual capacities, to deprive Plaintiffs of equal protection, due process, and access to courts based on protected characteristics, including gender, disability, trauma status, and indigency.

- Plaintiff Palacios was targeted through a coordinated legal strategy involving fabricated dockets, dual representation, and sealed trauma records weaponized by Defendant Herbert J. White and his associates. Defendants Christy Wilhelm and White knowingly operated a parallel custody scheme outside lawful jurisdiction, while Defendant Brad

Urban, then incarcerated, was elevated into custody status. These acts were undertaken to erase Palacios's rights while reinforcing male control of litigation outcomes.

- Plaintiff Basista was subjected to retaliatory legal action, including a Petition to Terminate Parental Rights, immediately after asserting lawful rights through a Motion to Modify Custody and Motion to Compel. Defendants Kristin Ruth, Evonne S. Hopkins, and Stephen Marino coordinated procedural obstruction, imposed financial barriers, and enforced therapist-driven restrictions with no judicial oversight. Defendant Judge Julie Bell ratified these acts through silence, refusals to adjudicate, and institutional complicity.

- Defendant Dr. Cynthia Sortisio issued a false and biased psychological evaluation in concert with Marino and Ruth, despite a direct conflict of interest, for the purpose of fabricating judicial findings that would remove Basista's parenting rights under color of mental health risk. Her testimony was used to justify exclusion, and her failure to respond to follow-up concerns further cemented the narrative constructed by the conspirators.

The overt acts of the conspiracy include: fabricated dockets; refusal to serve or notice; use of sealed records; mental health manipulation; dual representation; gatekeeping orders; denial of indigency; misuse of contempt; and refusal to adjudicate properly filed motions. These acts were motivated by animus toward Plaintiffs' gender, trauma-related disability status, and pro se assertion of federal rights.

Defendants' conduct violated 42 U.S.C. § 1985(3) by conspiring to deprive persons of equal protection of the laws and equal privileges under the laws, and by using state machinery to reinforce private bias, personal retaliation, and gender-based power dynamics.

That machinery did not operate on its own. It was driven by women in robes, gatekeepers with state authority, and professionals entrusted with neutrality, some of whom, as Black women or LGBTQ public servants, knew firsthand the cost of structural exclusion. And yet they chose to uphold it. That betrayal magnifies the injury.

COUNT IV — Abuse of Process and Fraud on the Court

Defendants, including Herbert Jay White, Donna Hedgepeth Johnson, and Randell Hastings, maliciously misused legal process to achieve objectives outside legitimate judicial functions. Despite the false appearance that White had formally withdrawn from the case, he continued to act as the strategic architect of this litigation, leveraging his dual role as a former DHSS attorney to access confidential records, manipulate dockets, and guide procedural decisions designed to suppress Plaintiff Palacios's access to justice. This arrangement gave the false impression of independent counsel while maintaining White's effective control over the litigation through his proxies, Johnson and Hastings.

As a former judge turned private attorney, Johnson used her insider knowledge to shield White's ongoing influence, facilitating the entry of void 2022 custody orders against Plaintiff Palacios despite knowing the foundational jurisdictional defects. These actions were not isolated missteps; they were deliberate acts of judicial sabotage, executed with full awareness of their illegality. Johnson's participation represented a fundamental betrayal of judicial integrity and procedural justice, transforming the courtroom into an instrument of gendered retaliation against a pro se mother.

White's ongoing influence is particularly egregious given his role as a former DHSS attorney, a position that allowed him to exploit confidential state records and create the false impression that these actions were motivated by legitimate state interests, when in fact they were privately orchestrated acts of retaliation.

Their conduct constituted both abuse of process and fraud on the court, actionable under 42 U.S.C. §§ 1983, 1985, 1986 and controlling federal precedent.

- In Plaintiff Palacios's case, Defendant Herbert J. White fabricated contempt allegations, manipulated court schedules to evade service, and misrepresented payment records to obtain unlawful indigency denials and incarceration threats. These tactics were designed not to resolve legal claims, but to harass and suppress Plaintiff's access to her children through financial and reputational sabotage.

- In Plaintiff Basista's case, Defendants including Kristin Ruth, Evonne S. Hopkins, and Stephen Marino orchestrated a litigation scheme in which sealed federal trauma records were injected into civil court proceedings, parallel case filings were used to exhaust remedies, and reunification restrictions were imposed under the guise of therapeutic necessity, all while court actors refused to adjudicate pending motions. These acts weaponized process, not to adjudicate parental rights, but to silence and punish Plaintiff for asserting them.

- Defendant Dr. Cynthia Sortisio committed fraud on the court by submitting a psychological evaluation despite an existing therapeutic relationship with the child, violating clinical neutrality and forensic standards. Her testimony falsely portrayed Plaintiff Basista's maternal bond, was shielded from challenge by a gag order, and was used as the exclusive evidentiary basis for a custody order entered without hearing. These actions constitute fraud on the court under *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and deprived Plaintiff of a fair tribunal.

The judicial process in both Plaintiffs' cases was not used to resolve disputes under law; it was weaponized to execute extrajudicial objectives: parental erasure, reputational destruction, and silencing of constitutional speech. Such abuse violates the Due Process Clause of the Fourteenth Amendment and supports relief under § 1983.

COUNT V — Violations under the Americans with Disabilities Act (ADA) and the Violence Against Women Act (VAWA)

Defendants discriminated against Plaintiffs based on perceived or actual disabilities and survivor status:

- Plaintiff Palacios was subjected to unlawful wage garnishment and contempt without regard for trauma history or documented disability-based financial limitations, in violation of Title II of the ADA.

- Plaintiff Basista was subjected to forced psychological disclosure, illegal mental health allegations, and court-imposed barriers based on trauma-linked records, also in violation of the ADA.

- Defendant Dr. Cynthia Sortisio's evaluation and testimony disregarded Plaintiff Basista's trauma-linked status and mental health accommodations under the ADA. Instead of offering clinical support, she pathologized Plaintiff's trauma and falsely characterized her maternal bond, weaponizing disability-linked vulnerabilities in furtherance of retaliatory litigation. Her conduct violates both the ADA and the VAWA by reinforcing barriers to court-based parenting relief.

- Defendant Evonne S. Hopkins, acting under color of law as a court-appointed attorney, cited trauma-linked and sealed mental health records in open court and in pleadings in retaliation against Plaintiff Basista, in direct violation of confidentiality protections afforded under the ADA and VAWA.

- Defendant Herbert J. White invoked Plaintiff Palacios's trauma history to discredit her parenting ability and participated in dual-representation litigation designed to exploit her disability status, further entrenching gender-based legal disparity.

- Defendant Kristin Ruth used her role as a legal professional to enforce a gag provision in a custody order that silenced Plaintiff Basista from challenging trauma-based restrictions imposed under ADA-violative conditions. This order was premised on false assurances of reunification and was issued in retaliation for Plaintiff's efforts to assert her parental rights.

Both Plaintiffs were targeted as domestic violence survivors: sealed records were weaponized against them; their survivor status was ignored or used punitively. These actions violated protections under 34 U.S.C. § 12291 and the VAWA, including the right to confidentiality, nondiscrimination, and access to court-based relief.

COUNT VI — Systemic Use of Unadjudicated Custody Orders to Terminate Parental Rights

In both Plaintiffs' cases, custody "orders" were used to strip them of contact with their children without any adjudication of unfitness, endangerment, or due process hearing. The orders, though labeled as judicial decrees, are in fact consent agreements or private stipulations enforced without findings of fact, conclusions of law, guardian ad litem involvement, or any adversarial process.

In Plaintiff Basista's case, this process was orchestrated by discredited legal professionals including Kristin Ruth and Karen Swinehart, enforced by attorney Evonne S. Hopkins, and manufactured through psychological findings from Dr. Cynthia Sortisio, who acted in conflict of interest while providing a fraudulent mental health evaluation that became the foundation of the February 2023 custody order. That order was entered without an evidentiary hearing, without a finding of unfitness, and with the explicit approval of Judge Julie L. Bell, who ratified it despite knowing that no due process had been afforded.

Defendant Judge Bell also refused to act on multiple emergency motions to restore parenting time, including motions clearly showing that the order had become functionally equivalent to a termination of rights without a trial.

In Plaintiff Palacios's case, the February 2022 order imposed custody restrictions without a hearing or any reference to the legal standard for removing parental rights. That order was issued by Judge Christy Wilhelm under a procedurally fabricated docket number, with no findings of fact, no service of process, and no notice to the Plaintiff. Defendant Herbert J. White, who simultaneously represented Plaintiff's former partners, presented sealed trauma-linked records without consent and without judicial challenge.

The 2023 custody order imposed against Plaintiff Basista relied primarily on the evaluation from Defendant Sortisio, issued without adversarial challenge, judicial findings, or procedural due process. Sortisio's participation and the use of her report without legal scrutiny constitute structural fraud and due process violations actionable under § 1983.

This practice violates core principles of procedural due process under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Santosky v. Kramer*, 455 U.S. 745 (1982), and constitutes an

ongoing state-sanctioned deprivation of familial integrity in violation of the Fourteenth Amendment. Because no adjudicatory process was applied, these orders do not warrant abstention deference and remain open to federal challenge under 42 U.S.C. § 1983.

## J. APPOINTMENTS CLAUSE VIOLATIONS AND VOID ORDERS

Plaintiffs Edyta Hanna Basista and Amy Hendricks Palacios allege that several of the named judicial Defendants acted beyond their constitutional authority by exercising administrative and executive functions without proper constitutional appointment, resulting in void orders, structural bias, and deprivation of fundamental rights. These actions directly violate the Appointments Clause (Art. II, Sec. 2, Cl. 2) and the Due Process Clause of the Fourteenth Amendment.

### 1. JURISDICTIONAL BASIS AND CONSTITUTIONAL PRINCIPLES

Under the Appointments Clause, all officers of the United States exercising significant authority must be appointed in a constitutionally valid manner. This principle applies to any official exercising discretionary control over the rights, liberties, or property interests of individuals, including judges, magistrates, and administrative officials who act beyond their adjudicative functions. (See Lucia v. SEC, 585 U.S. ___ (2018); *Freytag v. Commissioner*, 501 U.S. 868 (1991); *Buckley v. Valeo*, 424 U.S. 1 (1976)).

The United States Supreme Court has held that the status of an official as an "inferior officer" is determined by the nature and extent of their authority, not merely their title. This includes state judges and magistrates who engage in non-judicial actions or exercise administrative control over procedural outcomes without constitutional oversight.

### 2. SPECIFIC DEFENDANTS AND ACTIONS IN VIOLATION

#### Judge Julie L. Bell

Acted outside her judicial capacity by delegating judicial authority to private actors, including therapists and supervised visitation monitors, without proper

oversight or adjudicatory process. Judge Bell's refusal to act despite known procedural failures effectively transformed her role into one of administrative control, removing judicial discretion from the process.

### Judge Margaret P. Eagles

Acted as a procedural enforcer without proper adjudication, including denying access to evidence and imposing gatekeeping restrictions without the procedural safeguards required for judicial actions. Operated as a de facto administrator by allowing known conflicts of interest to dictate case outcomes, in direct violation of the Supreme Court's mandate in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

### Former Judge Donna Hedgepeth Johnson

Despite no longer holding judicial office, actively participated in case management, procedural enforcement, and judicial decision-making without constitutional authority, transforming her role into that of an administrative officer without proper appointment.

3. SPECIFIC VOID ORDERS AND ENFORCEMENT CONSEQUENCES

### Basista's 2023 Child Custody Order:

This order is void ab initio because it was entered without an evidentiary hearing, without findings of parental unfitness, and without proper judicial oversight. It improperly relied on third-party delegation to private actors without adjudication, including therapists with conflicts of interest. While no improperly sealed records were used in the underlying custody matter, the order lacks the fundamental elements of due process required under the Constitution, making it legally unenforceable. It cannot form the basis for ongoing enforcement, contempt, or gatekeeper restrictions without violating the Due Process Clause.

**Relief for Basista:** Immediate vacatur of the 2023 order as void ab initio, restoration of her fundamental parental rights, and judicial recognition that the order never had legal effect. This should include immediate restoration of contact with her children without the financial and procedural barriers that effectively terminated her parental rights.

Palacios's 2022 Child Custody Order:

This order is similarly void because it was issued under a procedurally fabricated docket (18-CVD-3436-120), where Palacios was never properly served, not named in the original caption, and denied due process. It transferred custody to an incarcerated father without findings of unfitness, in direct violation of *Santosky v. Kramer*, 455 U.S. 745 (1982). This order was issued without an adversarial process and is constitutionally defective from inception. While sealed records have not been used for custody determinations, Defendant Herbert Jay White has unlawfully accessed Palacios's financial information through DHHS, improperly modifying child support and garnishing wages without lawful authority.

**Relief for Palacios:** Immediate vacatur of the 2022 order as void ab initio, with restoration of the 2015 Mecklenburg County custody order that provided for 50/50 shared custody. This restoration should include immediate resumption of parental access without conditions based on the void order and a full accounting and return of improperly garnished wages.

4. LEGAL BASIS FOR VOID ORDERS

Under Lucia and Freytag, orders issued by improperly appointed or constitutionally unqualified officers are void ab initio and cannot form the basis of legal rights, obligations, or enforcement actions.

The procedural acts of these officials, including the issuance of contempt orders, modification of custody without hearings, and imposition of gatekeeper

restrictions, constitute ultra vires acts outside their legitimate authority as judges and therefore void.

To the extent that any Defendant attempts to invoke abstention doctrines, including Rooker-Feldman or Younger, Plaintiffs explicitly assert that these orders were not the result of valid state court adjudications but instead were administrative acts lacking the judicial character necessary to invoke such defenses. These orders are legally void, not merely voidable, and thus do not qualify for abstention or comity deference.

## K. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs EDYTA HANNA BASISTA and AMY HENDRICKS PALACIOS respectfully request that this Court:

a. Declare that the actions of Defendants violated Plaintiffs' constitutional and statutory rights under the First, Fourth, Fifth, and Fourteenth Amendments; 42 U.S.C. §§ 1983, 1985(3), 1986; the Americans with Disabilities Act (ADA); the Violence Against Women Act (VAWA); and the Supremacy Clause of the U.S. Constitution.

b. Declare that all orders, including custody, contempt, child support and termination orders, entered against Plaintiff Basista and Plaintiff Palacios without proper jurisdiction, due process, or factual findings, are void ab initio and unenforceable under the Fourteenth Amendment and controlling Supreme Court precedent, including *Santosky v. Kramer*, 455 U.S. 745 (1982), and Troxel v. Granville, 530 U.S. 57 (2000).

c. Declare that the sealed, trauma-linked records disclosed in Wake County Case 24-CVS-32966-910 on October 23, 2024, in violation of a federal protective order (Case No. 5:24-cv-00686-BO-KS) are unlawfully disclosed and must be immediately stricken from the record, resealed, and barred from further use or dissemination without prior leave of this Court.

d. Issue preliminary and permanent injunctive relief enjoining all Defendants from enforcing, referencing, or relying on these void orders in any forum or proceeding unless and until a full, neutral, and constitutionally compliant adjudication is held.

e. Enjoin Defendants from pursuing, initiating, or maintaining retaliatory proceedings against Plaintiffs, including but not limited to gatekeeper orders, contempt actions, wage garnishments, and termination proceedings, until a full and fair evidentiary hearing is conducted, including an assessment of the jurisdictional defects, procedural violations, and constitutional harms detailed in this Complaint.

f. Order the immediate restoration of Plaintiff Basista's parental rights, including unsupervised visitation and physical custody, pending a full and fair custody hearing before a neutral judge, with all procedural safeguards, including cross-examination and neutral expert evaluations, restored.

g. Order that Plaintiff Palacios's child support obligations be recalculated based on a valid custody order, including but not limited to the original Mecklenburg County order, and enjoin further wage garnishments, asset freezes, and financial collections until such time as a full, neutral adjudication is held.

h. Award compensatory damages to both Plaintiffs for emotional distress, reputational harm, and financial loss resulting from the enforcement of void orders and retaliatory litigation.

i. Award punitive damages against individual Defendants whose conduct demonstrated willful disregard for constitutional rights, bad faith, or retaliatory motive.

j. Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

k. Retain jurisdiction to enforce the Court's orders and ensure continuing compliance with constitutional mandates.

l.   Grant such other and further relief as this Court deems just and proper in law or equity.

Plaintiffs further request that this Court expressly acknowledge their right to conduct discovery sufficient to expose and substantiate each claim herein. Plaintiffs intend to use Rule 26(d) early discovery, depositions, and subpoenas to prove these allegations with documentation, sworn testimony, and government records. This case will not rest on assertion, it will be proven with evidence.

This Court's intervention is not only constitutionally mandated, it is morally necessary. Through the unchecked force of white male privilege, this litigation has systematically erased Plaintiffs' rights, personhood, and motherhood.

## L.   CONCLUSION

Plaintiffs Edyta Basista and Amy Palacios file this action not just to assert their legal rights, but to reclaim their personhood. For years, they have been treated not as mothers, not as citizens, but as objects, pushed, punished, silenced, and erased. Every courtroom they entered became another battleground where their trauma was not just ignored; it was weaponized.

What they seek from this Court is not sympathy, but recognition. Not just as litigants, but as people. Mothers. Survivors. Human beings entitled to dignity under the Constitution.

The Supreme Court has affirmed that the Due Process Clause "guarantees more than fair process; it provides heightened protection against government action that 'interferes with rights implicit in the concept of ordered liberty.'" (*Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). There is no right more implicit, more sacred, than the bond between a parent and child, and no government actor may sever it without a full and fair constitutional process.

Plaintiffs were never given that process. They were never given that chance.

Basista and Palacios v. Batch, et al                                                    Complaint

The Fourteenth Amendment protects liberty. The First protects voice. The ADA protects vulnerability. The VAWA protects survival. Yet these women have been left unprotected, unheard, and unseen.

This Court is now the final place where their humanity might still matter.

Plaintiffs respectfully ask: See us. Hear us. Let us be real. Let us be people again.

And let the law apply not just in name, but in truth.

## M. JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all claims so triable.

Plaintiffs invoke the judgment of a jury to evaluate the abuses of power, privilege, and institutional betrayal that only arise in systems where white male privilege dictates legal outcomes from behind a façade of neutrality.

Respectfully submitted this 9th day of May, 2025.

**/s/ Amy Hendricks Palacios**
Amy Hendricks Palacios, Plaintiff Pro Se
3832 Grovesner St, Harrisburg, NC 28075

**/s/ Edyta Hanna Basista**
Edyta Hanna Basista, Plaintiff Pro Se
PO Box 27806, Raleigh, NC 27611

Basista and Palacios v. Batch, et al                    Complaint

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___9th___ May 2025.

*Amy Hendricks Palacios*

**Amy Hendricks Palacios, *Plaintiff Pro Se***
3832 Grovesner St, Harrisburg, NC 28075

STATE OF NORTH CAROLINA, Texas

COUNTY OF ___Tarrant___

On this _9th_ day of May, 2025, before me, the undersigned Notary Public, personally appeared Amy Hendricks Palacios, personally known to me (or proved to me on the basis of satisfactory evidence) to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the individual executed the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public, State of Texas

Notary Public
My Commission Expires: ___03/18/2028___

**John D Clark**

ID NUMBER
13240917-9
COMMISSION EXPIRES
March 18, 2028

Electronically signed and notarized online using the Proof platform.

Basista and Palacios v. Batch, et al                    Complaint

I declare under penalty of perjury that the foregoing is true and correct.
Executed on ___9/h___ May 2025.

_(signature)_

Edyta Hanna Basista, *Plaintiff Pro Se*
PO Box 27806, Raleigh NC 27611

STATE OF NORTH CAROLINA

COUNTY OF ___Wake___

On this ___9___ day of May, 2025, before me, the undersigned Notary Public, personally appeared Edyta
Hanna Basista, personally known to me (or proved to me on the basis of satisfactory evidence) to be the
individual whose name is subscribed to the within instrument and acknowledged to me that she executed
the same in her authorized capacity, and that by her signature on the instrument, the individual executed
the instrument.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first
above written.

_(signature)_

Notary Public
My Commission Expires: ___10-19-26___

BARBARA BELFORD
NOTARY PUBLIC
Wake County
North Carolina
My Commission Expires Oct. 19, 2026